IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALVIN ADDISON, #S09998, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 19-1252-JPG |
| ) | |
| EDDIE JOHNSON (a/k/a CLARENCE E. ) | |
| JOHNSON MORNINGSTAR), and ) | |
| KEAGAN BOGARD, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Now before the Court are two motions for summary judgment. Defendant Keagan Bogard (Wabash County Deputy Sheriff) seeks summary judgment in Doc. 47, and Defendant Eddie Johnson, a/k/a Clarence E. Morningstar Johnson (Mt. Carmel Police Officer) moves for summary judgment in Doc. 51. Plaintiff Alvin Addison filed a single response to both motions. (Doc. 60). As explained below, Bogard's motion will be granted, and Johnson's motion will be granted in part and denied in part.

### BACKGROUND

Plaintiff Addison filed this *pro se* civil rights lawsuit while he was incarcerated at Robinson Correctional Center. (Doc. 1, p. 1). He has since been released from custody. (Doc. 43). His claims arise from his warrantless arrest on November 23-24, 2017, his transport to the Wabash County Jail (the "Jail") and subsequent events at the Jail. (Doc. 1, pp. 7-9). The Complaint asserts that Johnson entered Addison's residence, found Addison with his hands up, then choked Addison and slammed him to the ground, injuring his stomach. Johnson hog-tied Addison and dragged him outside, and he was thrown into the back of Bogard's vehicle, injuring his shoulder. Upon his

1

arrival at the Jail, Addison was stripped of his clothing in front of a female officer and female inmates, dragged to the "drunk tank," and left there suffering from his injuries for four days until he was sent to the hospital for medical treatment. (Doc. 1, pp. 7-9). He had surgery on his shoulder and stomach to repair the injuries allegedly inflicted by Defendants during his arrest.

Following threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Addison was allowed to proceed on four claims. (Doc. 11, p. 3). Several Defendants and Count 4 were dismissed after the Court found Addison did not exhaust his available administrative remedies as to those individuals. (Doc. 40). The case then proceeded on the following remaining counts:

> **Count 1:** Fourth Amendment claim against Defendants Johnson and Bogard for the unlawful arrest of Plaintiff on November 23, 2017.
>
> **Count 2:** Fourth Amendment claim against Defendants Johnson and Bogard for the unlawful use of force against Plaintiff during his arrest on or around November 23, 2017.
>
> **Count 3:** Fourth and/or Fourteenth Amendment claim against Defendant Johnson[1] for denying Plaintiff medical care for the shoulder and stomach injuries he suffered incident to his arrest on November 23, 2017.

(Doc. 11, p. 3; Doc. 40, p. 6).[2]

## RELEVANT FACTS

At the time of Addison's arrest, he resided in a home owned by his ex-wife, Susan Addison; Susan and their daughter Alexis also lived there. (Doc. 48, pp. 1, 3; Doc. 48-2, pp. 10-11). Bogard and Johnson went to the home twice on the night of November 23-24, 2017, first at about 8:18 p.m. to investigate a report of possible domestic disturbance, and several hours later to arrest

---

[1] Defendant Bogard was dismissed from Count 3 in the Court's Order granting summary judgment in favor of some Defendants for failure to exhaust. (Doc. 40, p. 6).
[2] Addison responded to the motion for summary judgment for failure to exhaust (Doc. 33) and the Court's Order to Show Cause (Doc. 36) with a document entitled "Complaint." (Doc. 38). To the extent Addison intended it to serve as an Amended Complaint, the Court declined to construe it as such and confirmed that Addison's original pleading (Doc. 1) remains the operative Complaint. (Doc 40, pp. 6-7).

Addison after taking complaints from Susan and Alexis. (Doc. 48, p. 3; Doc. 48-1, p. 1).

Bogard and Johnson submitted copies of their body camera videos from their encounters with Addison. Attachment C (Doc. 59) is from Bogard's 8:18 p.m. visit to the residence. Attachment D is from Bogard's body camera from 11:54 p.m. on November 23, 2017 to 12:24 a.m. on November 24, 2017 covering the time Addison was handcuffed and taken into custody. Attachment E shows video from 12:24 a.m. to 12:33 a.m. on November 24, 2017 at the Addison residence. Attachment F (sealed)[3] covers 12:36 a.m. to 12:54 a.m., including Bogard's transport of Addison to the Jail, his removal from the vehicle, and Defendants bringing him into the Jail and the holding cell. (Doc. 48-1, pp. 4-5).

Johnson's body camera video is found in Exhibits 1-A and 1-B of Doc. 53. Exhibit 1-A shows Defendants taking Addison into custody at the residence. Exhibit 1-B (sealed) depicts Addison coming out of Bogard's vehicle and being taken into the Jail by Defendants.

Upon Bogard's first visit, he found Addison lying on the ground outside, bleeding from his arm. Addison said his wife and kids had beaten him and he had been bitten by a dog. (Doc. 48, p. 4; Doc. 48-1, p. 1). Bogard called an ambulance and went inside the house to determine whether any injured persons were inside; nobody else was there. (Doc. 48, p. 3; Doc. 48-1, p. 1). After Johnson arrived to assist, Addison told Johnson he was bitten by a dog and was not attacked by anyone else. *Id.*

Bogard talked to Susan, who said that Addison had grabbed her neck and pushed her onto a bed, then when Alexis intervened Addison grabbed Alexis by the hair and banged her head multiple times into a cabinet. Alexis' dog bit Addison while he was hitting Alexis. (Doc. 48, p. 3; Doc. 48-1, p. 2). Bogard left the residence and met with Susan and Alexis. Each signed a complaint

---

[3] Attachment F and Exhibit 1-B were filed under seal because they include images of Addison after officers removed his clothing at the jail. (See Doc. 58).

accusing Addison of domestic battery. *Id.*

Susan asked for officers to accompany her when she returned to the residence to get clothes. Bogard and Johnson went back to the house with her and found that Addison was inside with the doors locked. (Doc. 48, p. 5; Doc. 48-1, pp. 2-3). With Susan's permission, Bogard entered the house through an unlocked window and opened the door for Johnson to enter. Inside, Addison came out of a bedroom into the kitchen/dining area where Johnson encountered him and ordered him to get on the ground. (Doc. 51-1, p. 2; Doc. 53, Exhibit 1-A, timestamp 00:17:59-18:18). Addison had his hands in the air but did not get down onto the floor. Johnson placed Addison on the ground; the parties disagree on the amount of force Johnson exerted to do so. Addison claims Johnson slammed him to the floor (Doc. 60, pp. 15-16) and Defendants maintain Johnson used a reasonable amount of force and did so for the safety of Addison and the Defendants so handcuffs could be applied. (Doc. 51, pp. 5, 13). Bogard assisted Johnson in handcuffing Addison while he lay on the floor. (Doc. 48, p. 5; Doc. 48-1, p. 3).

After Addison was back on his feet, Defendants assert Addison walked under his own power to Bogard's vehicle and was never placed in leg shackles or hog-tied as Addison asserted in the Complaint. (Doc. 59, Attachment D, 00:20:44-00:23:12).

Bogard drove Addison to the Jail and assisted him out of the vehicle where he placed Addison on the ground. (Doc. 48, pp. 5-6; Doc. 48-1, pp. 3-4; Doc. 59, Attachment F, 00:43:20-00:48:20; Doc. 53, Exhibit 1-B, 00:44:27-00:48:00). Defendants did not believe Addison was injured and assert Addison refused to stand. (Doc. 48-1, pp. 3-4; Doc. 51-1, p. 3). Addison states he was in too much pain to stand or walk, and claims officers put shackles on his ankles at that time and carried him into the Jail hog-tied. (Doc. 60, p. 18, Doc. 48-2, pp. 73-74, 76, 92-96, 100-01). Bogard and Johnson state they "grasped Addison by the arms and shoulders and moved him

4

the short distance into the jail;" they did not lift his feet off the ground or lift him by the handcuff chain, and his legs were not shackled. (Doc. 48, p. 6; Doc. 48-1, p. 4; Doc. 51-1, p. 3). Johnson states Addison did not appear injured or request medical care when they arrived at the Jail (Doc. 51-1, p. 4). Addison asserts that during the drive he told Bogard his shoulder, ankle, and stomach were hurt, and told Defendants he was hurt when they removed him from the vehicle. (Doc. 48-2, pp. 71-73).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is proper only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). The moving party has the burden of establishing that no material facts are genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence*, 391 F.3d at 841.

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d

at 836. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; accord *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

## DISCUSSION

### Count 1 – Arrest Without a Warrant (Johnson and Bogard)

Addison asserts he was arrested on November 23-24, 2017 without a warrant, implying that he believes the arrest was unlawful. (Doc. 1, p. 7). Both Defendants argue that the arrest was supported by probable cause and was lawful. (Doc. 48, pp. 7-10; Doc. 51, pp. 8-11). The Court finds Defendants' arguments persuasive.

Susan Addison and Alexis Addison signed complaints alleging that Addison battered them, which provided probable cause for Defendants to arrest Addison without the need to obtain a warrant. (Doc. 48, pp. 7-8; Doc. 51, p. 9). *See United States v. Reedy*, 989 F.3d 548, 555 (7th Cir. 2021); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). Furthermore, a warrant was not needed for Defendants to enter Addison's residence because Susan Addison, who resided there and had common authority over the premises, gave them permission to enter. (Doc. 48, pp. 9-10; Doc. 51, p. 11). *See United States v. Mojica*, 863 F.3d 727, 731 (7th Cir. 2017).

Addison does not contradict any of the facts regarding the legality of the arrest as set forth by Defendants. (Doc. 60). He merely adds that they never read him *Miranda* rights, which is irrelevant to the question of whether the warrantless arrest was proper. (Doc. 60, pp. 1, 14). Addison has not demonstrated the existence of any genuine dispute of material fact related to whether his arrest by Defendants on November 23-24, 2017, was unlawful. To the contrary, the facts before the court indicate that the arrest was supported by probable cause and did not amount to a violation of Addison's Fourth Amendment rights. Defendants are entitled to summary

judgment in their favor on Count 1.

***Count 2 – Excessive Force (Johnson and Bogard)***

Addison's claims in Count 2 regarding the force used during his arrest are governed by the Fourth Amendment. *See Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 843 (7th Cir. 2004) (excessive force in an arrest, stop, or seizure is analyzed under the Fourth Amendment's reasonableness standard); *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). Whether the force used to seize an arrestee is reasonable is an objective inquiry; the Court must assess the totality of the circumstances from the perspective of a reasonable officer on the scene. *See Graham*, 490 U.S. at 396; *Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021). *Graham* sets forth several factors to be considered, including "the severity of the crime at issue, the immediate threat the suspect posed to the safety of the police officers and others, and if the suspect actively resisted or attempted to evade arrest by flight." *Smith*, 10 F.4th at 736 (citing *Graham*, 490 U.S. at 396).

A number of the factual assertions in the Complaint are contradicted by the video evidence from Defendants' body cameras. Defendants also point out that Addison's own versions of the events contradict one another. The video evidence, however, does not clearly depict Johnson's actions in taking Addison from a standing position to the floor at his residence.

Addison's Complaint states that while he was inside the residence, Johnson choked him and slammed him to the ground, injuring his stomach, then hog-tied him and dragged him outside. (Doc. 1, pp. 7-8). The Complaint asserts he was then thrown into the back of Bogard's vehicle, still hog-tied, which injured his shoulder. *Id.* Addison testified in his deposition that he was standing in the kitchen with his hands up before Johnson grabbed him and slammed him to the floor; he stated Bogard did not touch him until after he was on the ground. (Doc. 48-2, pp. 60-61,

7

63, 66-67). Addison then confirmed he walked from the house to Bogard's vehicle with assistance from the Defendants. (Doc. 48-2, pp. 96-97).

### A. Bogard – Arrest at Residence

Examining Bogard's actions during the arrest of Addison at the residence, Bogard's motion notes that he was not involved in moving Addison from a standing position to the floor. (Doc. 48, pp. 10; Doc. 48-1, p. 3). Addison's deposition testimony confirms Bogard's point, as does the video evidence. The video shows that Bogard did not enter the kitchen where Johnson encountered Addison until Addison was already on the ground. (Doc. 59, Attachment D, timestamp 00:17:57-18:00). Bogard assisted in handcuffing Addison while he was on the ground and Addison's legs were not shackled. (Doc. 48-1, p. 3). The body cam footage shows that Addison was not "hog-tied" at any time. Both officers helped Addison up from the floor by lifting him by his clothing, and Addison walked to Bogard's car under his own power, with Bogard behind him. (Doc. 59, Attachment D, 00:19:05-22:40; Doc. 53, Exhibit 1-A, 00:20:40-21:30). Addison was not "thrown" into Bogard's vehicle; instead, Bogard directs Addison to put his left foot up on the running board, which Addison does and then sits on the rear passenger seat, where Bogard fastens the seatbelt around him. (Doc. 59, Attachment D, 00:22:40-23:15). Addison's ankles are not cuffed. Johnson did not accompany Addison to Bogard's vehicle and was not present when Addison got into the seat.

The Seventh Circuit has instructed that "[w]hen the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (citing *Scott v. Harris*, 550 U.S. 372, 379-80 (2007)).

Based on the video evidence as well as Addison's deposition testimony, there is no factual

8

dispute as to Bogard's involvement in taking Addison into custody at his residence. The videotape contradicts Addison's original claim that he was hog-tied, dragged to Bogard's vehicle, and thrown into it. The video shows that Bogard had no part in taking Addison to the ground, did not cuff or hog-tie Addison's ankles, walked Addison to his vehicle, and never threw Addison into the car. There is no evidence in the record that Bogard used excessive force on Addison during the sequence of events that unfolded at the Addison residence, and therefore no genuine factual dispute. Bogard is entitled to summary judgment as to this portion of Count 2.

### B. Johnson – Arrest at Residence

Johnson asserts that when he encountered Addison in the kitchen of the home, he issued a lawful order to Addison to get to the ground. (Doc. 51, p. 13). When Addison refused, Johnson "assisted in placing [him] on the ground, for his safety and for Officers' safety, for the purpose of handcuffing" Addison. (Doc. 51, p. 5). He contends that this action and the force involved in taking Addison from a standing position to lying face-down on the floor were reasonable under the circumstances. (Doc. 51, pp. 11-14). He further asserts that he is protected from liability by the doctrine of qualified immunity. (Doc. 51, pp. 15-18).

In the Complaint, Addison alleges that Johnson:

> put his right forearm to the front of Plaintiff's neck with his left arm under Plaintiff's left arm putting his hand behind Plaintiff's head and pushing it forward choking the Plaintiff, saying "I said get on the ground," slamming Plaintiff Addison to the floor knocking the air out of him, landing all of his weight on the back hurting his stomach.

(Doc. 1, pp. 7-8). The videos do not contradict this description of Johnson's actions.

Johnson's body cam video depicts Johnson walking into the kitchen where Addison is standing with his hands in the air. (Doc. 53, Exhibit 1-A, 00:17:59). Johnson orders Addison to get down on the ground. Addison turns away from Johnson and leans forward, then Johnson

9

quickly moves him to the floor. The video does not clearly show what physical actions Johnson performed to take Addison down. Within 10 seconds (Doc. 53, Exhibit 1-A, 00:18:08), Addison is on the floor. Bogard enters the room and holds Addison's shoulders; the officers cuff Addison's hands behind his back while he is lying on his left side. (Doc. 53, Exhibit 1-A, 00:18:12-26).

Bogard's video does not show Johnson's takedown of Addison; Addison is already on the floor when Bogard enters the room. While Bogard holds Addison down and handcuffs are applied, Addison can be heard saying he came out with his hands up and repeating "you didn't have to do that." (Doc. 59, Attachment D, 00:18:05-18:53). Addison says he can't stand up, so Bogard and Johnson lift him up by his clothing to a standing position. (Doc. 59, Attachment D, 00:18:54-00:19:11).

The Seventh Circuit observed that "[a] conclusive video allows a court to know what happened and decide the legal consequences." *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380, 386 (2007)). The video in this case, however, does not conclusively support either Johnson's account that he did not use excessive force to place Addison on the ground, or Addison's account that Johnson "slammed" him to the ground with more force than was necessary. Notably, Johnson never describes in his motion what physical actions he employed to take Addison down. Examining the *Graham* factors, the crime Addison was accused of (domestic battery) is serious, but he was not suspected of having used a weapon and the alleged victims were not present in the house. Susan informed Defendants before they entered the house that there were no guns, other than maybe BB guns. (Doc. 59, Attachment D, 23:56:49-23:56:59). The video does not indicate that Addison posed an immediate threat to the officers' physical safety – Johnson walked into the room where Addison was standing still with his empty hands raised above his head, and upon being ordered to get on the ground, it appears

10

that Addison began to comply by turning slightly away from Johnson and leaning over. Johnson did not wait any longer, but immediately took Addison to the floor. Addison did not offer any resistance to Johnson (other than having earlier secluded himself in a locked bedroom, where he says he was asleep; Doc. 51-2, p. 12/47)[4] and did not try to flee to avoid arrest.

These circumstances indicate that some force may have been reasonable to effectuate Addison's arrest. However, the factual dispute over what actions and degree of force Johnson used on Addison is not resolved by the video evidence. Because material facts are in dispute as to what amount of force was used, summary judgment in Johnson's favor on this question is not warranted. This unresolved factual question is intertwined with the question of whether Johnson's actions violated Addison's constitutional rights by using more force that was reasonable under the circumstances. Thus, it is premature at this juncture to decide whether Johnson may be shielded by qualified immunity for his actions. *See Smith v. Finkley*, 10 F.4th 725, 742 (7th Cir. 2021).

For these reasons, Johnson's motion for summary judgment will be denied as to the portion of Count 2 related to the use of force against Addison when he was arrested at his home.

**C. Use of Force Upon Addison's Arrival at the Jail (Bogard and Johnson)**

Addison testified in his deposition that he was again subjected to excessive force after his arrival at the Jail, claiming Bogard pulled him out of the car, Defendants hog-tied him at that time, and then carried him into the Jail by the cuffs. (Doc. 48-2, pp. 73-76, 92-93, 95, 100-101). Bogard correctly points out that the Complaint includes no facts describing Addison's exit from the car and movement into the Jail or any improper use of force during that movement. Instead, the Complaint merely says that after Addison's clothes were stripped off at the Jail, Defendants

---

[4] Johnson's Exhibit 51-2 (Addison's deposition) includes four pages of deposition transcript on each page of the exhibit. The first page number cited refers to the exhibit page and the second number is that of the transcript's pagination.

"dragged the Plaintiff into the drunk tank" where he spent the next four days. (Doc. 1, p. 8). Bogard therefore argues that Addison's excessive force claim in Count 2 does not encompass the actions involved in moving Addison from Bogard's vehicle into the Jail. (Doc. 48, pp. 11-14). This point is well-taken.

Addison's response to the earlier motion for summary judgment on the issue of exhaustion (Doc. 32) was entitled "Complaint" but was docketed as his Response. (Doc. 38). The Court ordered Addison to clarify whether he intended the document to be an amended complaint (Doc. 39). Addison never responded and did not seek to amend his complaint since then to expand on the factual allegations supporting his excessive force claim.

Even if the Court liberally construes the Complaint to include a claim for excessive force based on Bogard and Jackson carrying Addison from Bogard's vehicle into the Jail, the video evidence conclusively shows that Addison never had shackles on his ankles, was not hog-tied as he testified, and was not lifted or carried by his handcuff chains. Bogard's body cam shows him opening the door to the back seat where Addison sits slumped forward. (Doc. 59, Attachment F, 00:44:00-45:35; see also Johnson video, Doc. 53, Exhibit 1-B, 00:44:37-45:58). Bogard removes Addison's seat belt, directs him to get out, pulls on Addison's shirt/jacket and tells him to put his feet under him. Addison slumps out of the vehicle onto the ground while Bogard holds him to slow his descent. (Doc. 53, Exhibit 1-B, 00:45:20-45:40). Addison then lies on his side and doesn't say anything. Shortly thereafter, Addison starts to groan unintelligibly and cry. Defendants lift him by grasping his jacket and belt. Addison says, "God help me please" but does not answer when asked what is wrong, other than repeating "God help me … oh my God." (Doc. 59, Attachment F, 00:46:25-48:00). Defendants carry Addison by his clothing the short distance into the Jail, with his feet dragging on the ground. They deposit him face down on the floor inside the building. (Doc.

59, Attachment F, 00:48:00-49:00; Doc. 53, Exhibit 1-B, 00:47:30-49:00).

The actions depicted on both body cam videos show that Bogard and Johnson used only minimal force to lift Addison by his clothing from his position lying on the ground next to Bogard's vehicle, and then to carry him into the Jail. The videos show that Addison was never hog-tied as he claims, never had shackles on his legs/ankles, and officers never lifted him by his handcuff chains or nonexistent leg shackles. In light of this evidence, there is no genuine factual dispute regarding Defendants' use of force to move Addison into the jail, and they are entitled to summary judgment on this portion of Count 2.

***Count 3 – Denial of Medical Care (Johnson)***

Addison's claim in Count 3 for denial of medical treatment would also fall under the Fourth Amendment so long as he remained an arrestee, but would be governed by the Fourteenth Amendment if he had been criminally charged and was a pretrial detainee at the time. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (Due Process Clause prohibits conditions of confinement for pretrial detainees that amount to punishment); *Currie v. Chhabra*, 728 F.3d 626, 630-31 (7th Cir. 2013) (Fourth Amendment analysis applies to conditions of confinement and medical care claims brought by arrestees). At this juncture, construing the claim in the light most favorable to Addison and because it is unclear whether Addison had a probable cause hearing while he was confined over the weekend following his arrest, the Court will apply the Fourth Amendment's "objective reasonableness" standard.[5] *See Currie*, 728 F.3d at 631 ("The issue is whether the state actor's 'response to [the arrestee]'s medical needs was objectively unreasonable' and 'caused the harm of which [the arrestee] complains.'") (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir.

---

[5] Johnson assumes that Addison was a pretrial detainee and argues that he fails to establish the components of a Fourteenth Amendment claim for inadequate medical care. (Doc. 51, pp. 14-15). Addison testified that he did not appear before a judge until eight days after his arrest. (Doc. 51-2, p. 18/69).

2011)).

As noted above, Addison asserts that Johnson's takedown injured his stomach and Bogard injured his shoulder while throwing him into the vehicle. The Complaint states that after arriving at the Jail, Addison was "dragged" "into the drunk tank and "was left there injured for 4 days from Nov. 23, 2017 until Nov. 27, 2017 until a[n] ambulance arrived." (Doc. 1, p. 8). Addison was then treated at the hospital and was told he would need surgery for his shoulder and lower stomach. *Id.* Based on these assertions, the Court allowed him to proceed on his claim for denial of medical care for the shoulder and stomach injuries suffered in connection with his arrest. All Defendants other than Johnson were dismissed from this claim. (Doc. 40). Addison later testified that he had hernia surgery after he was released from the Jail. (Doc. 51-2, pp. 21-22/84-86, 26-27/104-05).

The Seventh Circuit instructs courts to consider four factors to determine whether an officer's response to an arrestee's medical needs was objectively unreasonable: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz*, 656 F.3d at 530. A plaintiff must also show that "the defendants' conduct caused the harm of which [he] complains." *Id.*

To begin with, the Court has already determined that the video evidence contradicts Addison's claim that Bogard injured his shoulder by throwing him into the police vehicle. Therefore, the inquiry will focus on the stomach injury allegedly caused by Johnson.

It is not at all clear that Johnson had notice that Addison needed medical attention for a stomach injury. After Johnson took Addison down to the floor and handcuffs were applied, Defendants stood Addison up on his feet and he was able to walk under his own power to Bogard's vehicle which was parked down the drive leading to Addison's residence. Addison did not display

any injury or voice a need for medical attention during that time.

Upon arriving at the Jail, Johnson watched Bogard assist Addison out of his vehicle. While Addison was lying on the ground, he began moaning and crying. He continued to cry, moan, and repeat "oh my God" and "God help me" while Johnson and Bogard carried him inside and while they removed his shoes, cuffs, and jacket. (Doc. 53, Exhibit 1-B, 00:47:20-51:20). Addison's cries could have indicated that he was in pain, but he never articulated what injury or medical need he may have had, other than one statement that the officers "broke my f**ing arm." (Doc. 53, Exhibit 1-B, 00:50:07-51:20; Doc. 59, Attachment F, 00:50:00-51:20). Johnson replied, "Nobody broke your arm." After the officers removed Addison's handcuffs and outer shirt, they directed him to get up and walk to the holding cell, telling him if he could not, they would pick him up and carry him there. He didn't get up, so they lifted him by the shirt and pants and carried him to a cell, placing him on the floor. (Doc. 53, Exhibit 1-B, 00:52:21-54:13; Doc. 59, Attachment F, 00:52:20-54:03). Addison was silent during that movement. Likewise, he said nothing and displayed no reaction while the officers rolled him over and removed the rest of his clothing. He appeared to be passed out or semi-conscious while he was moved to the holding cell and during the rest of the video recordings.

Neither video depicts Addison raising any complaint that his stomach was hurt. His only intelligible remark was the claim that the officers broke his arm. From this recorded sequence of events, the Court cannot discern any facts to suggest that Johnson had notice of Addison's stomach injury, either immediately after Johnson used some level of force to take Addison from a standing position to the floor, or during the interaction with Addison at the Jail.

Turning to the second factor listed in *Ortiz*, Addison's condition was later deemed to be serious enough to require hernia surgery – but nothing that transpired during Addison's arrest or

15

movement into the Jail indicated at that time that he had a serious stomach injury. Moreover, according to Addison, Johnson was only present at the Jail while Addison was initially placed there shortly after his arrest. Addison testified that the last time he saw Johnson at the Jail was about 3-5 minutes after he was placed in the holding cell, when Johnson looked at him through the cell window. (Doc. 51-2, p. 20/77). According to this statement, Johnson would not have known whether Addison requested medical care during the next several days that he spent in the Jail before he was taken to the hospital.

The other factors (scope of requested treatment and police administrative/penological concerns) do not come into play in the claim against Johnson, because Addison did not make a request to Johnson for treatment, thus no police interests regarding treatment were implicated. Finally, there are no facts in the record to suggest that Johnson's conduct caused the harm Addison may have suffered from the denial of medical treatment. No request for treatment of Addison's stomach injury was directed to Johnson, and Johnson was not alleged to have been present during the four days Addison waited at the Jail for medical attention. Taken together, the record does not contain facts to indicate that Johnson acted in an objectively unreasonable manner with regard to Addison's stomach injury.

To summarize, the evidence before the Court does not present any genuine factual dispute that would allow for a verdict in Addison's favor against Johnson in Count 3. Johnson is entitled to summary judgment on this portion of Addison's claim.

## DISPOSITION

**IT IS HEREBY ORDERED** that Defendant Bogard's Motion for Summary Judgment (Doc. 47) is **GRANTED** and the claims against him are **DISMISSED with prejudice**. The Clerk is **DIRECTED** to terminate Bogard as a Defendant and to enter judgment in his favor at the

conclusion of the entire action.

**IT IS FURTHER ORDERED** that Defendant Johnson's Motion for Summary Judgment (Doc. 51) is **GRANTED IN PART** as to **COUNT 1** for unlawful arrest and **COUNT 3** for the denial of medical care. The motion is **DENIED IN PART** as to the portion of **COUNT 2** on Johnson's use of force in taking Addison into custody at his residence and is **GRANTED IN PART** as to the portion of **COUNT 2** regarding Johnson's use of force to move Addison from the police vehicle into the Jail.

By separate order, this matter will be set for a telephonic status conference for the purpose of discussing whether a settlement conference or a referral to mediation would be beneficial and selecting a firm trial date.

**IT IS SO ORDERED.**

**DATED:  August 25, 2022**

                                            *s/ J. Phil Gilbert*
                                            **J. PHIL GILBERT**
                                            **United States District Judge**